1   **VANESSA H. WIDENER (Bar No. 203967)**
      vhw@amclaw.com
2   **JENNIFER S. MUSE (Bar No. 211779)**
      jsm@amclaw.com
3   **ANDERSON, McPHARLIN & CONNERS LLP**
4   **Thirty-First Floor**
5   **444 South Flower Street**
    **Los Angeles, California  90071-2901**
6   **TELEPHONE: (213) 688-0080 ♦ FACSIMILE: (213) 622-7594**
7
8   **Attorneys for Plaintiff,**
    **FEDERAL DEPOSIT INSURANCE CORPORATION**
9   as Receiver for INDYMAC BANK, F.S.B.
10
11              **UNITED STATES DISTRICT COURT**
12   **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND BRANCH**
13
14   FEDERAL DEPOSIT INSURANCE        Case No. **C11-03367**
     CORPORATION as Receiver for
15   INDYMAC BANK, F.S.B.,            **COMPLAINT FOR:**
                                       **(1)  NEGLIGENCE**
16              Plaintiff,            **(2)  NEGLIGENT**
                                            **MISREPRESENTATION**
17        vs.                         **(3)  NEGLIGENT**
                                            **HIRING/NEGLIGENT**
18   JUDITH JAMELLE WILLIAMS, an           **SUPERVISION**
     individual and MASON-MCDUFFIE
19   REAL ESTATE, INC. a California
     corporation doing business as
20   PRUDENTIAL BETTER HOMES
     AND GARDENS REAL ESTATE
21   MASON MCDUFFIE,
22              Defendants.
23
24        Plaintiff Federal Deposit Insurance Corporation as Receiver for IndyMac

25   Bank, F.S.B. ("FDIC"), for claims for relief against defendants, and each of them,

26   alleges as follows:

27   / / /

28   / / /

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

# COMMON ALLEGATIONS

## PARTIES

1.     Plaintiff FEDERAL DEPOSIT INSURANCE CORPORATION is a government entity appointed by the Office of Thrift Supervision to act as Receiver for INDYMAC BANK, F.S.B. ("INDYMAC") pursuant to 12 U.S.C. §1821(d)(2)(B).   The claims which are the subject of this lawsuit were retained by or transferred to the FDIC.

2.     INDYMAC was an FDIC-insured financial institution which was authorized to do business in the State of California.

3.     The FDIC is informed and believes and thereon alleges that defendant JUDITH JAMELLE WILLIAMS ("WILLIAMS") is an individual who at all times relevant to allegations in this Complaint resided in Alameda County in the State of California, and was a licensed real estate sales person.

4.     The FDIC is informed and believes and thereon alleges that defendant MASON MCDUFFIE REAL ESTATE, INC. is a California corporation doing business as PRUDENTIAL BETTER HOMES AND GARDENS REAL ESTATE MASON MCDUFFIE ("MASON MCDUFFIE") with its principal place of business in Pleasanton, California.   The FDIC is further informed and believes and thereon alleges that at the time of the subject transactions, MASON MCDUFFIE was a real estate broker doing business in the State of California and was engaged in the business of acting as an intermediary between buyers and sellers of real property.   MASON MCDUFFIE acted as the real estate broker in the transactions which are the subject of this litigation.   Upon information and belief, at all times relevant herein, WILLIAMS was an employee and/or agent of MASON MCDUFFIE.

/ / /

/ / /

/ / /

881647.1 5662.115

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

## JURISDICTION AND VENUE

5.    This Court has original jurisdiction to hear this matter pursuant to 28 U.S.C. § 1331 since all suits to which the Federal Deposit Insurance Corporation is a party are deemed to arise under the law of the United States. (12 U.S.C. §1819(b)(2)(A).)

6.    Venue is proper in the Northern District of California, pursuant to 28 U.S.C. § 1391, in that Defendants reside in this judicial district. Defendants are subject to personal jurisdiction in this district at the time the action is commenced and has sufficient minimum contacts with this judicial district.

## RELEVANT FACTS

7.    The FDIC is informed and believes and thereon alleges that WILLIAMS recruited Gary Upshaw ("Upshaw")  for two transactions which were designed to enrich WILLIAMS and other third parties.  Both transactions were consummated concurrently and were represented to the respective lenders by WILLIAMS and MASON MCDUFFIE as primary residence purchases.  The FDIC is informed and believes and thereon alleges that Upshaw never resided in either property as a primary residence.

## (NEY AVENUE LOAN)

8.    The FDIC is informed and believes and thereon alleges that WILLIAMS, as an employee and/or agent of MASON MCDUFFIE, arranged a transaction whereby the sales price of a property located at 8345 Ney Avenue, Oakland, California (the "Ney Avenue Property") was inflated to have the funds from the inflated sales price paid to third parties and WILLIAMS/MASON MCDUFFIE received an inflated commission.

9.    The Ney Avenue Property was originally listed for sale, by a real estate agent other than WILLIAMS, on the Multiple Listing Service ("MLS") for $470,000.  This listing was cancelled on March 6, 2006.

1         10.    The Ney Avenue Property was then listed again in the MLS on

2 May 9, 2006 for $559,000 by WILLIAMS.

3         11.    Approximately one month after WILLIAMS re-listed the

4 property, a purchase contract for the Ney Avenue Property was signed on June 7,

5 2006 in the amount of $600,000 with Arthur Williams as the purchaser.  The FDIC

6 is informed and believes that the transaction was part an estate sale and therefore the

7 property seller was not willing to make any repairs or upgrades to the Property.

8         12.    The FDIC is informed and believes and thereon alleges that on

9 July 28, 2006, WILLIAMS modified the purchase contract to change the

10 purchaser's name from Arthur Williams to Upshaw.  An addendum to the purchase

11 contract indicated that the property sellers would not be responsible for any repairs

12 to the property.

13         13.    Based upon and in reliance of the modified purchase contract, on

14 or about August 28, 2006, Kay-Co. Investments Inc. doing business as Pro30

15 Funding ("Kay-Co.") funded two loans totaling $570,000 (a first mortgage of

16 $480,000 and a second mortgage of $90,000) for Upshaw to purchase of the Ney

17 Avenue Property as a primary residence.

18         14.    Upon closing of the transaction, $65,000 in loan proceeds were

19 to be disbursed to Ardyce Bryant for purported painting services.  Ultimately, the

20 escrow officer disbursed the loan proceeds as follows: $15,000 to Ardyce Bryant,

21 painter; $25,000 to Ray X. Jackson, contractor; and $25,000 to Ivan Utsey,

22 contractor; notwithstanding the purchase contract's provision indicating no repairs

23 were to be performed or paid out of the seller's proceeds.

24         15.    INDYMAC, in reliance on all of the documentation provided to

25 Kay-Co. and the representations made to Kay-Co., thereafter purchased the first

26 mortgage from Kay-Co.

27         16.    The FDIC is informed and believes and thereon alleges that

28 Upshaw was recruited as a buyer of the Ney Avenue Property by WILLIAMS for an

ANDERSON, McPHARLIN & CONNERS LLP
Lawyers
444 South Flower Street, Thirty-First Floor
Los Angeles, California 90071-2901
Tel (213) 688-0080 • Fax (213) 622-7594

1 | inflated price.  Therefore, the sale of the Ney Avenue Property to Upshaw as not an
2 | arm's-length transaction but was instead a sale at an inflated price aimed at
3 | defrauding Kay-Co. and INDYMAC, as Kay-Co.'s assignee in the secondary
4 | market.  In particular, WILLIAMS sought a mortgage loan or loans from Kay-Co. to
5 | facilitate a fraudulent sale of the Ney Avenue Property to Upshaw, whom
6 | WILLIAMS had recruited in furtherance of the scheme, for an inflated purchase
7 | price, and she intended to use the loan proceeds to enrich herself and the third
8 | parties at the expense of Kay-Co. and INDYMAC.

17.   WILLIAMS furthered the fraudulent transaction when, among other things, she recruited Upshaw as a buyer of the Ney Avenue Property with the knowledge and intent that she would not negotiate a fair market price for the property and provided to the lender only the Upshaw purchase contract.

18.   WILLIAMS knew that, if she had presented the true facts, the Ney Avenue loan would not have funded.  Because of her experience in the real estate industry as a licensee with the California Department of Real Estate, WILLIAMS also knew that her false statements and misrepresentations would be passed on by Kay-Co. to its assignees, such as INDYMAC in the secondary market.

19.   MASON MCDUFFIE failed to supervise WILLIAMS and prevent her from carrying out and facilitating this fraudulent property sale. As a direct and proximate result of WILLIAMS misrepresentation of the true sales price of the Ney Avenue Property, IndyMac purchased a loan that it otherwise never would have purchased.

20.   Plaintiff's damages resulting from the Ney Avenue Loan are presently estimated to exceed $320,368.

**(GOLF LINKS LOAN)**

21.   The FDIC is informed and believes and thereon alleges that WILLIAMS, as an employee and/or agent of MASON MCDUFFIE, arranged a transaction whereby the sales price of a property located at 8244 Golf Links Road,

881647.1 5662.115

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

1   Oakland, CA (the "Golf Links Property") was inflated to have the funds from the

2   inflated sale price paid to a third party and an inflated commission paid to

3   WILLIAMS/MASON MCDUFFIE.

4           22.    The Golf Links Property was listed in the MLS for $499,000.

5           23.    The FDIC is informed and believes and thereon alleges that

6   WILLIAMS received a signed purchase contract for $500,000 from "Gary Gold and

7   or his assignee" on June 13, 2006.

8           24.    The FDIC is informed and believes and thereon alleges that on

9   the same day, WILLIAMS modified the purchase contract to change the purchaser's

10  name from Gary Gold to Gary Upshaw ("Upshaw") and the purchase price from

11  $500,000 to $542,000.

12          25.    Based upon and in reliance of the modified purchase contract, on

13  or about August 31, 2006, Heritage Plaza Mortgage ("Heritage Plaza") funded two

14  loans totaling $517,900 (a first mortgage of $406,500 and a second mortgage of

15  $108,400) to Upshaw for the purchase of the Golf Links Property as a primary

16  residence.

17          26.    Upon closing of the transaction, $41,984.36 of the loan proceeds

18  (*i.e.*, almost exactly the difference between the original purchase price and the

19  newly-increased purchase price) was disbursed to a third party named Michael

20  Williams.

21          27.    After the loans closed, the first mortgage was sold on the

22  secondary market.  In reliance on all of the documentation provided to Heritage

23  Plaza and the representations made to Heritage Plaza therein, INDYMAC purchased

24  the first mortgage.

25          28.    The FDIC is informed and believes and thereon alleges that

26  Upshaw was recruited as a buyer of the Golf Links Property by WILLIAMS.

27  Therefore the sale of the Golf Links Property to Upshaw as not an arm's-length

28  transaction but was instead a sale at an inflated sale price aimed at defrauding

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

1  Heritage Plaza and INDYMAC, as Heritage Plaza's assignee in the secondary

2  market. In particular WILLIAMS sought a mortgage loan or loans from Heritage

3  Plaza to facilitate a fraudulent sale of the Golf Links Property to Upshaw whom

4  WILLIAMS had recruited in furtherance of the scheme, for an inflated purchase

5  price, and she intended to use the loan proceeds to enrich herself and the third party

6  at the expense of Heritage Plaza and INDYMAC.

7         29.    WILLIAMS furthered the fraudulent transaction when, among

8  other things, she recruited Upshaw as a buyer of the Golf Links Property with the

9  knowledge and intent that she would not negotiate a fair market price for the

10  property. WILLIAMS provided the lender with only the Upshaw purchase contract.

11         30.    WILLIAMS knew that, if she had presented the true facts to

12  Heritage Plaza, Heritage Plaza would not have funded the Golf Links loan to

13  Upshaw. Because of her experience in the real estate industry as a licensee with the

14  California Department of Real Estate, WILLIAMS also knew that her false

15  statements and misrepresentations would be passed on by Heritage Plaza to its

16  assignees, such as INDYMAC in the secondary market.

17         31.    MASON MCDUFFIE failed to supervise WILLIAMS and

18  prevent her from carrying out and facilitating this fraudulent property sale. As a

19  direct and proximate result of WILLIAMS misrepresentation of the true purchase

20  price of the Golf Links Property, IndyMac purchased a loan that it otherwise never

21  would have purchased.

22         32.    Plaintiff's damages resulting from the Golf Links Loan are

23  presently estimated to exceed $332,992.

24           **FIRST CLAIM FOR RELIEF**

25        **(NEGLIGENCE AGAINST ALL DEFENDANTS)**

26         33.    The FDIC realleges and incorporates by this reference

27  paragraphs 1 through 32, inclusive, of this Complaint.

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

1        34.    The FDIC is informed and believes that at all times relevant to

2    the facts in this Complaint, WILLIAMS was a real estate agent employed by

3    MASON MCDUFFIE.

4        35.    As a real estate agent/broker with a pecuniary interest in the

5    property sale transactions out of which INDYMAC purchased the Ney Avenue loan

6    and the Golf Links loan (collectively the "Loans"), MASON MCDUFFIE and

7    WILLIAMS owed the lenders a duty to act in accordance with custom, practices and

8    standards of conduct of a real estate agent/broker prevailing in the industry. As part

9    of this duty, MASON MCDUFFIE and WILLIAMS owed the lenders a duty that

10    may not be delegated to third parties or independent contractors. As part of this

11    duty, MASON MCDUFFIE and WILLIAMS owed the lenders a duty to use

12    reasonable care under the circumstances to refrain from supplying false information

13    for the guidance of the lenders in connection with the Loans. MASON MCDUFFIE

14    and WILLIAMS knew that the lenders would use and rely upon the information that

15    MASON MCDUFFIE and WILLIAMS were providing to the lenders in connection

16    with the Loans.

17        36.    In breach of their duties to the lenders, MASON MCDUFFIE

18    and WILLIAMS provided false information to the lenders concerning the true

19    purchase prices of the Ney Avenue Property and the Golf Links Property. As stated

20    in paragraphs 9-12 above, the Ney Avenue Property had been listed for $470,000.

21    Then, WILLIAMS re-listed the property for $559,000 and accepted a purchase

22    contract for $600,000 from Arthur Williams. WILLIAMS then modified the

23    contract to sell the property to Upshaw for $600,000. Additionally, as stated in

24    paragraphs 22-24, above, the Golf Links Property was listed for $499,000. Two

25    days later, WILLIAMS received a purchase contract for $500,000. WILLIAMS

26    then modified the $500,000 contract to have the property sold to Upshaw for

27    $542,000. WILLIAMS then only provided the two Upshaw contracts to the lenders.

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

37.     The lenders relied on MASON MCDUFFIE and WILLIAMS to conduct their business in accordance with the duty of care implied by the law and the custom and practice of the real estate and mortgage lending industry. The lenders reasonably believed that the information submitted by MASON MCDUFFIE and WILLIAMS was true and was in accordance with the standards prevalent in the industry.

38.     INDYMAC reasonably relied upon the proper performance by MASON MCDUFFIE and WILLIAMS of their professional duties as real estate agents in making the decision to purchase the Loans.

39.     Plaintiff has been damaged as a result of the breach of professional duties by MASON MCDUFFIE and WILLIAMS, in an amount subject to proof at trial. Damages are presently believed to be in excess of $653,360, plus interest, costs and attorneys' fees.

## SECOND CLAIM FOR RELIEF

## (NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS)

40.     The FDIC realleges and incorporates hereby by this reference paragraphs 1 through 39, inclusive, of this Complaint.

41.     In July 2006, MASON MCDUFFIE and WILLIAMS submitted a purchase contract to Kay-Co. for the Ney Avenue Property which negligently misrepresented the purchase price for the transaction. MASON MCDUFFIE and WILLIAMS represented, and the lender reasonably believed, that the legitimate purchase price for the Ney Avenue Property was $600,000. Upon information and belief, the true purchase price was $470,000.

42.     In July 2006, MASON MCDUFFIE and WILLIAMS submitted a purchase contract to Heritage Plaza for the Golf Links Property which negligently misrepresented the purchase price for the transaction. MASON MCDUFFIE and WILLIAMS represented, and the lender reasonably believed, that the legitimate

ANDERSON, MCPHARLIN & CONNERS LLP
Lawyers
444 South Flower Street, Thirty-First Floor
Los Angeles, California 90071-2901
Tel (213) 688-0080 • Fax (213) 622-7594

1 purchase price for the Golf Links Property was $542,000. Upon information and
2 belief, the true purchase price was $500,000.

3      43.    MASON MCDUFFIE and WILLIAMS knew, or reasonably
4 should have known, that the representations were false at the time that they were
5 made to the lenders.

6      44.    The lenders reasonably relied on the information contained in the
7 purchase contracts prepared by MASON MCDUFFIE and WILLIAMS in deciding
8 to fund, and subsequently purchase on the secondary market, the Loans.

9      45.    INDYMAC reasonably relied upon the representations made by
10 MASON MCDUFFIE and WILLIAMS in making the decision to purchase the
11 Loans.

12      46.    Plaintiff has been damaged as a result of the misrepresentations
13 by MASON MCDUFFIE and WILLIAMS, in an amount subject to proof at trial.
14 Damages are presently believed to be in excess of $653,360, plus interest, costs and
15 attorneys' fees.

16 **THIRD CLAIM FOR RELIEF**
17 **(NEGLIGENT HIRING/NEGLIGENT SUPERVISION)**
18 **(AGAINST MASON MCDUFFIE)**

19      47.    The FDIC realleges and incorporates herein by reference
20 paragraphs 1 through 46, above, as if they were set forth again in full.

21      48.    As a real estate broker with a pecuniary interest in the
22 transactions whereby INDYMAC purchased the Loans, MASON MCDUFFIE owed
23 INDYMAC a duty to act in accordance with the law and in accordance with custom,
24 practices and standards of conduct of a mortgage broker professional prevailing in
25 the mortgage industry. As part of this duty, MASON MCDUFFIE owed
26 INDYMAC a duty to use reasonable care in hiring and supervising of employees
27 and agents. As part of this duty, MASON MCDUFFIE owed INDYMAC a duty to

28

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

1  ensure employees and agents refrain from supplying false information which

2  INDYMAC relied on in funding the Loans.

3          49.    MASON MCDUFFIE knew or reasonably should have known

4  that the employees and agents were not properly hired and/or supervised in

5  connection with the real estate broker duties and because of these qualities or lack of

6  qualities were likely to harm INDYMAC in connection with the work entrusted to

7  them.

8          50.    In breach of its duty to INDYMAC, MASON MCDUFFIE

9  negligently hired and/or supervised employees and agents who provided false

10  information concerning the Loans, which INDYMAC relied upon in deciding

11  whether to purchase the Loans.

12          51.    INDYMAC relied on MASON MCDUFFIE to conduct business

13  in accordance with the duty of care implied by the law and the custom of the real

14  estate industry, and relied on MASON MCDUFFIE to properly hire and supervise

15  employees and agents so the information submitted was true and had been reviewed

16  in accordance with the standard prevalent in the mortgage industry.

17          52.    INDYMAC reasonably relied upon the proper performance by

18  MASON MCDUFFIE of its duties to hire and supervise employees and agents in

19  making the decision to purchase the Loans.

20          53.    Plaintiff has been damaged as a result of the breach of duties by

21  MASON MCDUFFIE, in an amount subject to proof at trial, plus interest, costs and

22  attorneys' fees.

23          **WHEREFORE,** the FDIC prays for judgment against defendants, and

24  each of them, as follows:

25          1.    For general, compensatory, and consequential damages,

26  according to proof at trial in an amount of not less than $653,360, plus interest, costs

27  and attorneys fees;

28          2.    For its costs of suit incurred herein;

881647.1 5662.115

3.   For its reasonable attorneys' fees as allowed by Law;

4.   For prejudgment interest at the legal rate allowable; and

5.   For such other and further relief as the court deems just and proper.

DATED: July 8, 2011

ANDERSON, McPHARLIN & CONNERS LLP

By_____
Vanessa H. Widener
Jennifer S. Muse
Attorneys for Plaintiff,
FEDERAL DEPOSIT INSURANCE
CORPORATION as Receiver for INDYMAC
BANK, F.S.B.

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

881647.1 5662.115

12
COMPLAINT